# STATE OF NORTH CAROLINA

Granville County

File No. 07 CVS 844

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Sharon B. Iglesias
Address
4536 Fairport Road,
City, State, Zip
Oxford, NC 27565

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS

G.S. 1A-1, Rules 3, 4

**VERSUS**

Name Of Defendant(s)

John Wolford, Thomas Marrow, Don Jenkins

and the City of Oxford

Date Original Summons Issued
08-10-2007

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1
John Wolford
1101 College Street
Oxford, NC 27565

Name And Address Of Defendant 2
Thomas Marrow
132 Military Street
Oxford, NC 27565

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
Charles E. Monteith, Jr
Monteith & Rice, PLLC
102 Pickering Place. #3-D
Cary, NC 27513

Date Issued
8-10-07

Time
11:52
☒ AM ☐ PM

Signature

☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

☐ ENDORSEMENT
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement

Time
☐ AM ☐ PM

Signature

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

NOTE TO PARTIES: Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

**DEFENDANT'S EXHIBIT**
3

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | Name Of Defendant |
|---|---|---|
| 8-13-07 | 9 ☑AM ☐PM | John Vnfan |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | Name Of Defendant |
|---|---|---|
| 8-13-07 | 9 ☑AM ☐PM | Thomas Manire |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ 15.00 | |
| Date Received | Name Of Sheriff (Type Or Print) |
| 8-10-07 | |
| Date Of Return | County Of Sheriff |
| 8-13-07 | Granville |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

File No. 07 CVS 546

_____Granville_____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Sharon B. Iglesias | |
| *Address*<br>4536 Fairport Road, | **CIVIL SUMMONS** |
| *City, State, Zip*<br>Oxford, NC 27565 | ☐ ALIAS AND PLURIES SUMMONS |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br><br>John Wolford, Thomas Marrow, Don Jenkins<br><br>and the City of Oxford | *Date Original Summons Issued*<br>08-10-2007 |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| John Wolford<br>1101 College Street<br>Oxford, NC 27565 | Thomas Marrow<br>132 Military Street<br>Oxford, NC 27565 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>Charles E. Monteith, Jr<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-D<br>Cary, NC 27513 | *Date Issued*<br>8-10-07 | *Time*<br>11:56 ☒ AM ☐ PM |
|---|---|---|
| | *Signature*<br>~~John Clemure~~ | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8·13·07 | 9 | ☑ AM ☐ PM | John Wolford |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8·13·07 | 9 | ☑ AM ☐ PM | Thomas Mann |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ 15.00 | |
| Date Received | Name Of Sheriff (Type Or Print) |
| 8-10-07 | David Knott |
| Date Of Return | County Of Sheriff |
| 8·13·07 | Sampson |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

Granville _____ County

File No. 07 WS 846

**In The General Court Of Justice**
☐ District ☒ Superior Court Division

Name Of Plaintiff
Sharon B. Iglesias

Address
4536 Fairport Road

City, State, Zip
Oxford, NC 27565

**VERSUS**

Name Of Defendant(s)

John Wolford, Thomas Marrow, Don Jenkins

and the City of Oxford

# CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS**

Date Original Summons Issued
08-10-2007

G.S. 1A-1, Rules 3, 4

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
John Wolford
1101 College Street
Oxford, NC 27565

Name And Address Of Defendant 2
Thomas Marrow
132 Military Street
Oxford, NC 27565

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
Charles E. Monteith, Jr
Monteith & Rice, PLLC
102 Pickering Place, #3-D
Cary, NC 27513

Date Issued
8-10-07

Time
11:50  ☒ AM  ☐ PM

Signature
[signature]
☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ **ENDORSEMENT**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement

Signature
☐ AM  ☐ PM

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have *MANDATORY ARBITRATION* programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| *10-13-07* | *9* | ☑ AM ☐ PM | *John Walford* |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| *8-13-07* | *9* | ☑ AM ☐ PM | *Thomas Martin* |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| *8-10-07* | |
| Date Of Return | County Of Sheriff |
| *8-13-07* | *Danville* |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____Granville_____ County

File No. ▶ 07 CVS 846

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
Sharon B. Iglesias
*Address*
4536 Fairport Road
*City, State, Zip*
Oxford, NC 27565

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS

G.S. 1A-1, Rules 3, 4

**VERSUS**

*Name Of Defendant(s)*

John Wolford, Thomas Marrow, Don Jenkins

and the City of Oxford

*Date Original Summons Issued*
08-10-2007
*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Don Jenkins<br>105 Planter's Place<br>Oxford, NC 27565 | The City of Oxford<br>Mayor Alvin Woodlief<br>300 Williamsboro Street<br>Oxford, NC 27565 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)* | *Date Issued* | *Time* | |
|---|---|---|---|
| Charles E. Monteith, Jr<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-D<br>Cary, NC 27513 | 8-10-07 | 11:57 ☒ AM ☐ PM | |
| | *Signature* | | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8-20-07 | 4 | ☐ AM  ☒ PM | Don Jenkins |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8-13-07 | 9 | ☒ AM  ☐ PM | Mayor Alvin Woolley |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ 15.00 | |
| Date Received | Name Of Sheriff (Type Or Print) |
| 8-10-07 | David T. Smith |
| Date Of Return | County Of Sheriff |
| 8-13-07        8-20-07 | Bennett |
| Chief Woolley        Don Jenkins | |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____Granville_____ County

File No. 07 CVS 846

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Sharon B. Iglesias | |
| Address<br>4536 Fairport Road, | **CIVIL SUMMONS** |
| City, State, Zip<br>Oxford, NC 27505 | ☐ ALIAS AND PLURIES SUMMONS |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s)<br><br>John Wolford, Thomas Marrow, Don Jenkins<br><br>and the City of Oxford | Date Original Summons Issued<br>08-10-2007 |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Don Jenkins<br>105 Planter's Place<br>Oxford, NC 27565 | The City of Oxford<br>Mayor Alvin Woodlief<br>300 Williamsboro Street<br>Oxford, NC 27565 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued<br>8-10-07 | Time<br>11:80 ☒ AM ☐ PM |
|---|---|---|
| Charles E. Monteith, Jr<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-D<br>Cary, NC 27513 | Signature<br><br>☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | ☐ AM ☐ PM |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

NOTE TO PARTIES: _Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8-20-07 | 4 | ☐ AM ☒ PM | Don Jenkins |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 8-13-07 | 9 | ☒ AM ☐ PM | Mayor Alvin Woolly |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ 15.00 | |
| Date Received | Name Of Sheriff (Type Or Print) |
| 8-10-07 | |
| Date Of Return | County Of Sheriff |
| 8-13-07 | |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

$(919) 865-..23$

FILED

**STATE OF NORTH CAROLINA**                    **IN THE GENERAL COURT OF JUSTICE**

2007 AUG 10 AM 11: 56                                   **SUPERIOR COURT DIVISION**

**COUNTY OF GRANVILLE**                          07 CVS _840_

GRANVILLE COUNTY, C.S.C.

BY _____

**SHARON B. IGLESIAS,**

      **Plaintiff,**

    v.                                                                  **COMPLAINT**
                                                                                (Jury Trial Demanded)

**JOHN WOLFORD, Chief of Police**
**of Oxford, N.C., in his official**
**and individual capacities;**
**THOMAS MARROW, City Manager**
**Of Oxford, N.C., in his official**
**and individual capacities;**
**DON JENKINS, Human Resources**
**Manager for the City of Oxford, N.C.,**
**in his official and individual capacities, and,**
**the CITY OF OXFORD, N.C.**

      **Defendants.**

---

Plaintiff, complaining of Defendants, alleges as follows:

1. Plaintiff Sharon B. Iglesias (hereafter "Plaintiff" or "Ms. Iglesias") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina.

2. Defendant John Wolford (hereinafter "Defendant Wolford") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina. Insofar as he is sued for acts that he undertook outside of his official capacity as the Chief of the City of Oxford Police Department, he is sued in his individual capacity. Insofar as he is sued for acts he undertook in furtherance of a conspiracy with other employees of the City of Oxford, he is sued in both his individual and official capacities.

3. Defendant Thomas Marrow (hereinafter "Defendant Marrow") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina and the City Manager of the City of Oxford. He is sued for acts he undertook in furtherance of a conspiracy with other employees of the City of Oxford, and so he is sued in both his individual and official capacities.

1

4. Defendant Don Jenkins (hereinafter "Defendant Jenkins") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina and the Human Resources Manager of the City of Oxford. He is sued for acts he undertook in furtherance of a conspiracy with other employees of the City of Oxford, and so he is sued in both his individual and official capacities.

5. Defendant City of Oxford is a municipal corporation created, organized and existing under the laws of the State of North Carolina. Ms. Iglesias was continuously employed by Defendant City of Oxford from December 2, 1999 until Defendant Wolford and Defendant Marrow fired her on January 25, 2006.

6. Defendant Wolford notified Ms. Iglesias that he was firing her by letter dated January 24, 2006 that Defendant Wolford presented to Ms. Iglesias on January 25, 2006.

7. The former Oxford Police Chief, Roger Paul (hereinafter "Mr. Paul"), hired Ms. Iglesias as the Administrative Assistant to the Chief of Police in December 1999. In or about February 2000, subsequent to Mr. Paul's voluntary resignation as Chief of Police, Captain Bob Williamson (hereinafter "Capt. Williamson") was appointed Acting Chief of Police. Capt. Williamson served in the position of Acting Chief of Police until Defendant Wolford was hired as Chief of Police in or about June 2000. Ms. Iglesias was retained as Administrative Assistant to the Chief of Police throughout these personnel changes.

8. Upon information and belief, sometime prior to his being hired as the Oxford Police Chief, Defendant Wolford was previously employed as the Police Chief in Charlottesville, Virginia and became separated from this position when serious questions were raised about his performance and credibility in his capacity as Chief of Police there.

9. As the Chief of Police of the City of Oxford, North Carolina, Defendant Wolford was subject to the laws of the State of North Carolina, including but not limited to the General Statutes of the State of North Carolina.

10. As Chief of Police of the City of Oxford, North Carolina, Defendant Wolford was required, inter alia, to serve as auditor of the Drug and Alcohol Law Enforcement Special Fund (hereinafter "Fund"). The monies contained in the Fund are derived from state and federal forfeitures and the Fund is only to be used in official investigations.

11. At all times relevant to this complaint, all officers of the City of Oxford Police Department, including Defendant Wolford, were required to follow established police policy and procedure in order to obtain monies from the Fund. Such established police policy and procedure required multiple means of verification to ensure that the monies of the Fund were being withdrawn or otherwise accessed for proper purposes to include the requirement that a receipt for such monies be signed and that a witness be present for the receipt of said transactions.

12. Ms. Iglesias's duties included maintaining the receipts of the Fund until she reported that Defendant Wolford had received monies from the Fund without following required police

2

policy and procedure. After reporting that Defendant Wolford had received monies from the Fund without following required procedure, Ms. Iglesias's work duties were diminished so as to no longer include her administrative maintenance of the Fund.

13. Upon information and belief, on at least eight (8) occasions, starting on or about November 16, 2001 through to the time Ms. Iglesias reported the violation in May 2004, Defendant Wolford withdrew cash from the Fund for his own personal use.

14. When officers assigned to the Oxford Police Drug Unit received cash disbursements from the Fund, they did it during normal working hours and completed all required paperwork, according to established police policy and procedure, for receipt of the disbursement with required signatures and witness signature in place.

15. From November 16, 2001 until Ms. Iglesias reported her concerns regarding Defendant Wolford's receipt of monies from the Fund, there were eight (8) occasions on which Defendant Wolford took cash monies from the Fund without following established police policy and procedure. On each of these eight (8) occasions, Defendant Wolford personally obtained cash monies from the Fund absent the presence of a witness and without having otherwise appropriately documented such withdrawals from the Fund.

16. Upon information and belief, the respective date and amount of certain withdrawals from the Fund made by Wolford for which Wolford failed to follow established procedure were temporally and otherwise proximate to Defendant Wolford's personal financial obligations. Plaintiff contends that Paragraphs 17-19 that follow below are an example of this allegation; however, Paragraphs 17-19 are further alleged independently and separately.

17. While at work on April 15, 2003, Ms. Iglesias observed Defendant Wolford engage a female caller in a lengthy argument by telephone concerning car repairs in the amount of $400.00.

18. At some point between the time that Ms. Iglesias left work on April 15, 2003 and prior to Ms. Iglesias reporting for work on April 16, 2003, Defendant Wolford withdrew four-hundred dollars ($400.00) from the Fund without following established police policy and procedure by completing a receipt and having a witness for said withdrawal.

19. Within a month prior to Defendant Wolford's withdrawal from the Fund as described in Paragraph 17 above, Defendant Wolford's then wife, Paula Susan Wolford, had an accident while traveling in a personal vehicle belonging to herself and Defendant Wolford.

20. After Defendant Wolford took the four-hundred dollars ($400.00) from the Fund following regular work hours on April 15, 2003, Ms. Iglesias reported her concerns to City of Oxford Commissioner, Alice Currin (hereinafter "Commissioner Currin"). Upon information and belief, Commissioner Currin then requested an audit of funds maintained by the Oxford Police Department, beginning with the Fund.

3

21. On May 3, 2004, Officer Warren Hicks, Oxford Police Department Evidence & Property Room Technician, was alleged to have withdrawn funds from the Property & Evidence Room plus a safety deposit box maintained by OPD and funds collected for Special Olympics for his own personal use

22. On May 6, 2004, the State Bureau of Investigation ("SBI") came to the Oxford PD and began investigating funds missing from the Property and Evidence Room.

23. On May 6, 2004, Auditors for the City of Oxford came to Ms. Iglesias' office to audit all monies in the safe kept in her office, and the auditors interviewed Ms. Iglesias about the procedures in place to account for the cash in the Fund. Ms. Iglesias, in good faith, answered their questions about the cash withdrawals from the Fund as described above, and reported to the City Auditors that she believed her supervisor, the Chief of Police, Defendant Wolford, was wrongfully taking money from the Fund for his own personal use.

24. During the investigation by the SBI concerning Officer Warren Hicks at OPD, on or about May 6, 2004, Ms. Iglesias, in good faith, reported to the SBI that she believed her supervisor, the Chief of Police, Defendant Wolford, was wrongfully taking money from the Fund for his own personal use.

25. Upon information and belief, Defendant Wolford was made aware of Ms. Iglesias' reports to the City Auditor about his questionable withdrawals.

26. On May 17, 2004 Defendant Wolford, after threats and verbal reprimand, issued a written warning to Ms. Iglesias in retaliation to her reporting of Defendant Wolford's misuse of funds to City Auditors.

27. On May 18, 2004, Ms. Iglesias wrote to Oxford City Manager Defendant Marrow asking to meet with him to appeal the written warning she had received the day before from Defendant Wolford.

28. On May 19, 2004, Defendant Wolford instructed Ms. Iglesias to sign the Fund over to Defendant Wolford because Defendant Wolford was going to store it in the Finance Office located at City Hall. Defendant Wolford further instructed Ms. Iglesias that she would no longer have any responsibilities concerning the maintenance and/or control of the Fund.

29. Ms. Iglesias transferred everything in the Fund file to Defendant Wolford as he had instructed, and was thereafter disallowed from any maintenance and/or control of the Fund.

30. On May 25, 2004, Ms. Iglesias received a letter from Defendant Marrow denying Ms. Iglesias's request to meet with him to appeal the written warning, despite the City of Oxford's established policy and procedure that provided, as of May 2004: "Those

4

wishing to pursue an appeal shall have the right to appeal directly to the Human Resources Director *or the City Manager." (*emphasis added)

31. On or about the date of July 23, 2004, the SBI called and requested Ms. Iglesias to come to Raleigh. Ms. Iglesias provided the SBI with documents and information relating to Defendant Wolford's withdrawing cash from the Fund without signing out for it in her presence or in the presence of a witness and the evidence that these withdrawals matched his personal financial needs. The SBI told Ms. Iglesias they would talk with the Granville County District Attorney Sam Currin about the case.

32. In mid-August 2004, approximately one week following the SBI's contact with Ms. Iglesias with the resulting comments made by the Granville County D.A. Sam Currin resulting from the SBI's inquiry, Defendant Marrow informed then Oxford City Commissioner Mr. James Carey, in a private meeting, that "we are going to take care of the problem at the police department." Defendant Marrow further informed Mr. Carey that Defendant Marrow, Defendant Wolford, and Defendant Jenkins were "going to set [Ms. Iglesias] up to be fired from her job."

33. On September 2, 2004, City of Oxford Human Resources Director Defendant Jenkins came to Ms. Iglesias' office and told her he was conducting an internal investigation ordered by Defendant Marrow, and that Defendant Jenkins wanted to ask Ms. Iglesias some questions. Ms. Iglesias was fully cooperative and provided truthful answers to Defendant Jenkins' questions.

34. Three weeks later, on September 24, 2004, Defendant Wolford notified Ms. Iglesias of her demotion from her position as Administrative Assistant to the Chief of Police to the position of Police Dispatcher because it had been decided that Ms. Iglesias had "breached confidentiality" concerning an internal investigation involving another City employee.

35. On September 27, 2004, Ms. Iglesias grieved her demotion to Defendant Marrow. On October 4, 2004, after Defendant Wolford had received this grievance, he placed Ms. Iglesias on Administrative Leave with pay.

36. On October 6, 2004, Ms. Iglesias and her then attorney met with Defendant Jenkins.

37. In a letter dated October 7, 2004, Defendant Jenkins informed Ms. Iglesias that he saw no reason to change Defendant Wolford's demotion of her.

38. Ms. Iglesias appealed this decision to Defendant Marrow who conducted a hearing on October 14, 2004.

39. Defendant Marrow referred to the October 14, 2004 hearing as a "name clearing hearing."

5

40. On October 22, 2004, Defendant Marrow informed Ms. Iglesias that she would be reinstated to her position as Administrative Assistant effective October 27, 2004, but that she was receiving a final warning.

41. During the summer and fall of 2005, there was a campaign for the position of Mayor of Oxford. During said mayoral campaign, letters and campaign advertisements— attributable to the campaign of incumbent Mayor Al Woodlief—were published stating that Defendant Wolford's alleged taking of monies from the Fund had been investigated by the SBI and other agencies and that no wrongdoing was found.

42. Upon information and belief, said statements by Mayor Woodlief and/or his campaign were false as the SBI dropped its inquiry and could not pursue an investigation into the alleged misuse of funds by Defendant Wolford in or about August 2004, after having been informed by Granville County District Attorney Sam Currin that he did not wish to pursue an investigation concerning the same.

43. Incumbent Mayor Al Woodlief was reelected on November 8, 2005.

44. In an interview with WRAL on or about January 2006, Granville County District Attorney Sam Currin admitted that no investigation into such concerns had actually been conducted by the SBI.

45. On November 18, 2005, Plaintiff was dis-invited from a luncheon meeting of the PD convened by Defendant Wolford. Upon information and belief, Defendant Wolford, to an audience of officers and a few individuals from the public, called Ms. Iglesias "a liar and a slanderer."

46. On January 9, 2006, WRAL TV aired a televised interview with Ms. Iglesias and others in the Oxford community including former City Commissioner James Carey and Granville County District Attorney Sam Currin regarding Defendant Wolford's alleged wrongdoing.

47. Upon information and belief, during an interview by WRAL reporter Kelcey Carlson (hereinafter "Carlson") in connection with this report, District Attorney Sam Currin told Carlson that Defendant Wolford had "paid the money back."

48. Upon information and belief, District Attorney Sam Currin further stated to Carlson that he "trusted [Defendant Wolford]" and that "if [Sam Currin] thought or felt that there was any wrongdoing then [Sam Currin] would investigate."

49. Upon information and belief, on January 10, 2006, Defendant Wolford e-mailed all Oxford Police Department employees having access to e-mail, with the exception of Ms. Iglesias, an e-mail providing, in pertinent part: "Regarding recent actions by Sharon Iglesias going on WRAL, on air, continuing to discredit me and this department, her actions are not being ignored..."

6

50. On January 25, 2006, Defendant Wolford fired Ms. Iglesias, effective that day.

51. Ms. Iglesias was not afforded a pre-dismissal conference, as required by established City of Oxford Personnel Policy, in advance of her dismissal effective January 25, 2006.

52. On January 27, 2006, Defendant Marrow issued a written statement to the media providing that "[Ms. Iglesias'] allegations have been investigated by the SBI, the City's outside audit firm, the [District Attorney], and the City Manager."

53. Despite Ms. Iglesias' best efforts, she has been unable to obtain gainful employment consistent with her experience, abilities and qualifications.


## FIRST CLAIM
## UNLAWFUL CONSPIRACY


54. All allegations in Paragraphs 1-53 are re-alleged and incorporated herein by reference as if fully set forth.

55. Defendants Marrow, Jenkins, and Wolford, agreed on a common plan and took active steps to carry out the plan to intimidate or interfere with Ms. Iglesias' efforts to report what she believed, in good faith, was criminal activity conducted by Mr. Wolford. Threatening or intimidating a witness in the administration of justice is against the public policy of North Carolina.

56. When Ms. Iglesias refused to be intimidated, and would not be part of an unlawful conspiracy to cover-up Mr. Wolford's alleged wrongdoings, Defendants Marrow, Jenkins and Wolford engaged in a civil conspiracy to wrongfully discharge Ms. Iglesias.

57. The State of North Carolina has a public policy of encouraging employees to report perceived misuse of state and federal funds, and to cooperate with investigations concerning the same.

58. Defendant Wolford, as chief sworn law enforcement officer of the City of Oxford, had the duty to conduct himself in accordance with the laws of the State of North Carolina. He misrepresented his conduct, with respect to his withdrawals from the Fund, to government officials, and then discharged the main witness, Ms. Iglesias, to his wrongdoings after she refused to be intimidated.

59. Insofar as Defendants Wolford, Jenkins, and Marrow conspired to intimidate and then terminate Ms. Iglesias, because she reported misuse of funds by the chief law enforcement official, which she believed by law to constitute the crime of embezzlement, and then refused to be silenced about Defendant Wolford's using State and Federal funds

7

for his own personal needs, such actions are outside of the scope of the employment of the Defendants, and they are sued in their individual capacity for this common law tort.

60. Insofar as Defendants Wolford, Jenkins, and Marrow, outside of the scope of their employment, conspired to intimidate and then deprive Ms. Iglesias of her employment because she would not be silenced about Mr. Wolford's wrongdoing, this showed wanton, reckless and intentional disregard for Ms. Iglesias' rights and therefore Defendants are liable to pay her compensatory and punitive damages for humiliation, emotional distress, anguish, economic loss, and loss of professional esteem.

61. The amount of such damages, while in excess of ten-thousand dollars ($10,000.00), will be determined at trial.

### SECOND CLAIM
## VIOLATION OF NORTH CAROLINA CONSTITUTION'S RIGHT TO FREE SPEECH

62. All allegations in Paragraphs 1-61 are re-alleged and incorporated herein by reference as if fully set forth.

63. North Carolina's Constitution guarantees its citizens the right of freedom of speech and of the press, because these "are two of the great bulwarks of liberty and thus shall never be restrained."

64. Ms. Iglesias spoke out publicly in the media after she had made every effort internally to raise her concerns in the least disruptive way she could about her supervisor's diverting state and federal funds for his own personal use. She reported her concerns to the City Auditor during an audit called for by City Officials and to the SBI

65. When it was clear that the City Government was not going to conduct a proper investigation concerning the misuse of public monies, Ms. Iglesias reported the matter through the media because it was a matter of great public concern. The public report was a matter of legitimate public concern, as the potentially unlawful conduct of its highest law enforcement official in the City is certainly a matter of great public concern. Plaintiff's statements concerning Defendant Wolford and others, were well informed, and were made with an honest and otherwise legitimate purpose.

66. Because of her statements as a public citizen about matters of public concern, Defendant Wolford retaliated against Ms. Iglesias by discharging her in an abusive, abrupt, humiliating, and otherwise unconstitutional manner.

67. The abusive discharge—calling Ms. Iglesias a "liar and slanderer" in front of all her co-workers at a Department luncheon, where she was specifically dis-invited, and then discharging her in violation of the written rules of the City—was clearly designed to send

8

a clear message to other employees that they have no rights to free speech about any wrongdoings they witness at the Police Department.

68. This claim is brought directly under the North Carolina Constitution's Article I, Section 14. The retaliatory discharge herein described violates the public's interest in free expression and communication of important facts needed to make decisions about public funds and policies. If the retaliatory discharge herein described is perceived to be constitutional, the same would have a wrongfully, chilling effect against the Plaintiff, law enforcement employees of the City of Oxford, other civilian employees of the City of Oxford, and other employees of public institutions funded by local, state and federal funds.

69. Plaintiff was in the best position to speak out the alleged violations of law about which she complained.

70. No other legal remedy is available to Ms. Iglesias for this claim, since the State's Whistleblowing Statute (Article 14, Chapter 126 of the General Statutes) applies only to State employees, so she brings this action directly under the State Constitution.

71. The retaliatory discharge for exercising her constitutional rights to free speech caused emotional anguish and financial damage to Plaintiff, the amount of which exceeds ten-thousand dollars, but will be proven at trial.

### THIRD CLAIM
### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

72. All allegations in Paragraphs 1-71 are re-alleged and incorporated herein by reference as if fully set forth.

73. North Carolina, although providing wide latitude to management in discharging employees, prohibits discharges for unlawful reasons or reasons which contravene public policy.

74. Ms. Iglesias was discharged by Defendant City of Oxford and Defendant Wolford because she tried to report, through proper channels, evidence that he was diverting state and federal funds for his private use. When the SBI told her that the District Attorney was not going to pursue the matter, and a campaign of harassment and intimidation followed, Ms. Iglesias tried to bring the evidence forward to other officials.

75. It is the public policy of the State of North Carolina for police department employees to report and cooperate with investigations of good faith allegations of possible illegal activities.

9

76. Ms. Iglesias was a critical witness in this important investigation. She had important evidence to provide. Defendant Wolford, who was charged with investigating crimes in the City of Oxford, blamed the messenger and arbitrarily and capriciously fired the witness to his own alleged criminal activity.

77. The actions of Defendant City of Oxford and Defendant Wolford violated North Carolina public policy and so constitute wrongful discharge.

78. Defendants City of Oxford, Wolford, Jenkins, and Marrow wrongfully discharged Ms. Iglesias with wanton, reckless and intentional disregard for her rights, and are therefore liable to pay her compensatory damages for humiliation, anguish, emotional distress, economic loss, and loss of professional esteem. The amount of such damages will be determined at trial.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff Prays the Court:

a. Enter an injunction ordering Defendants to immediately reinstate Plaintiff to her position, with all back pay, and other benefits, as if she had never been discharged, and prohibiting Defendants from threatening, harassing, or discriminating against Plaintiff for having brought this suit or against any potential witness for participating in this suit;

b. Award Plaintiff compensatory damages as determined by the jury;

c. Tax the defendants for all costs and reasonable attorneys' fees associated with this action;

d. Award Plaintiff punitive damages in an amount to be determined by the jury;

e. That the Court award such other and further relief as it deems proper.

f. That this case be tried before a jury.

This the _10th_ day of August, 2007.

10

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF:

Charles E. Monteith, Jr.
N.C. State Bar No. 9368
For the firm of
MONTEITH & RICE, PLLC
102 Pickering Place, #3-D
Cary, North Carolina 27513
Telephone: (919) 460-6241


Shelli Henderson Rice
N.C. State Bar No. 28766
For the firm of
MONTEITH & RICE, PLLC
102 Pickering Place, #3-D
Cary, North Carolina 27513
Telephone: (919) 460-6241

11

STATE OF NORTH CAROLINA
COUNTY OF GRANVILLE

## VERIFICATION

SHARON B. IGLESIAS, First being duly sworn, deposes and says:

That she is the Plaintiff in the foregoing action; that she has read the foregoing Complaint and knows the contents thereof; and that the same is true of her knowledge, except as to those matters and things therein stated upon information and belief, and that to those matters she believes them to be true.

This 10th day of August, 2007.

*Sharon B. Iglesias*
Sharon B. Iglesias

Sworn and subscribed
Before me this the
10th day of August, 2007.

Notary Public

CHARLES E. MONTEITH, JR.
NOTARY PUBLIC
WAKE COUNTY, N.C.
My Commission Expires 4-25-2010

My Commission expires: 4-25-2010

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

FILED

2007 AUG 30 AM 11: 06

GRANVILLE COUNTY, C.S.C.

BY *Rita S. Stanley*
*Assistant*

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

SHARON B. IGLESIAS,

Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DEFENDANTS' MOTION FOR
EXTENSION OF TIME TO SERVE
ANSWER OR OTHERWISE PLEAD**

Defendants John Wolford, in his official and individual capacities, Thomas Marrow, in his official and individual capacities, Don Jenkins, in his official and individual capacities, and the City of Oxford (herein "Defendants"), by and through undersigned counsel, respectfully show the Court that additional time is needed for investigation and preparation of responsive pleadings in the above case, and pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure respectfully move the Court for an extension of time within which to serve an Answer or otherwise plead. As grounds therefor Defendants state as follows:

1.     This Motion is made prior to the expiration of the original time to file a responsive pleading on behalf of Defendants.

a.     Upon information and belief, Defendants John Wolford, in his official and individual capacities, Thomas Marrow, in his official and individual capacities, and the City of Oxford were served on August 13, 2007; accordingly, the current date on which a responsive pleading should currently be due on behalf of these Defendants is no earlier than September 12, 2007.

b.     Upon information and belief, Defendant Don Jenkins, in his official and individual capacities, was served on August 20, 2007; accordingly, the current date on which a responsive pleading should currently be due on behalf of Mr. Jenkins is no earlier than September 19, 2007.

1252636 v 1

2.     Undersigned counsel has only recently been assigned the defense of this case on behalf of Defendants; accordingly, counsel requires a brief extension of time within which to ascertain the facts of this case and prepare responsive pleadings.

3.     WHEREFORE, Defendants, by counsel, respectfully request that Defendants John Wolford, in his official and individual capacities, Thomas Marrow, in his official and individual capacities, and the City of Oxford be granted a thirty-day extension of time within which to serve an Answer or otherwise plead to the Complaint, to and including October 12, 2007, and Defendant Don Jenkins, in his official and individual capacities, be granted a thirty-day extension of time within which to serve an Answer or otherwise plead to the Complaint, to and including October 19, 2007

Respectfully submitted, this the 27 day of August, 2007

CRANFILL SUMNER & HARTZOG LLP

BY:     _____
M. ROBIN DAVIS
N.C. State Bar No.: 21655
NORWOOD P. BLANCHARD, III
N.C. State Bar No. 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone:  (919) 828-5100
Facsimile:  (919) 828-2277
E-Mail: mrd@cshlaw.com

STATE OF NORTH CAROLINA ┌FILED┐ IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF GRANVILLE   2007 AUG 30  AM II: 06      07 CVS 846

SHARON B. IGLESIAS,     GRANVILLE COUNTY, C.S.C.

Plaintiff, BY *Rita S. Stanley*
*Assistant*

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER EXTENDING TIME
TO SERVE ANSWER OR
OTHERWISE PLEAD**

Defendants, having for good cause shown made application for a thirty-day extension of
time within which to serve an Answer or otherwise plead to the Complaint; the Court finding the
interests of justice merit the granting of Defendants' Motion; and it appearing to the Court that
the time has not expired;

IT IS NOW THEREFORE ORDERED that Defendants' Motion be and the same hereby
is GRANTED; and it is further

ORDERED that Defendants John Wolford, in his official and individual capacities,
Thomas Marrow, in his official and individual capacities, and the City of Oxford shall be granted
a thirty-day extension of time within which to serve an Answer or otherwise plead to the
allegations contained in the Complaint, to and including October 12, 2007, and Defendant Don
Jenkins, in his official and individual capacities, shall be granted a thirty-day extension of time
within which to serve an Answer or otherwise plead to the allegations contained in the
Complaint, to and including October 19, 2007.

This the 30th day of August, 2007.

_Rita S. Stanley, Assistant_
CLERK/ASSISTANT CLERK, GRANVILLE COUNTY

1252636 v 1

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

SHARON B. IGLESIAS,

               Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

     This is to certify that the undersigned has this day served the attached *Defendants' Motion for Extension of Time to Serve Answer or Otherwise Plead* and proposed *Order* on all of the parties to this cause by depositing a copy hereof, postage prepaid, in the United States Mail, addressed as follows:

Charles E. Monteith, Jr.
Monteith & Rice, PLLC
102 Pickering Place, #3-3
Cary, NC 27513
*Attorney for Plaintiff*

Shelli Henderson Rice
Monteith & Rice, PLLC
102 Pickering Place, #3-3
Cary, NC 27513
*Attorney for Plaintiff*

This the _____ day of August, 2007

CRANFILL SUMNER & HARTZOG LLP

BY: _____

M. ROBIN DAVIS
N.C. State Bar No.: 21655
E-Mail: mrd@cshlaw.com
NORWOOD P. BLANCHARD, III
N.C. State Bar No. 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277

1252636 v 1

STATE OF NORTH CAROLINA  IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF GRANVILLE 07 CVS 846

SHARON B. IGLESIAS,

           Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

           Defendants.

**ANSWER OF DEFENDANTS**

Defendants respond to the Plaintiff's Complaint as follows:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

## SECOND DEFENSE and ANSWER

In response to the allegations contained in the individually-numbered paragraphs of the Complaint, the Defendants plead as follows:

1.    The Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1, so those allegations are denied.

2.    It is admitted that John Wolford is a citizen and resident of Granville County, that Mr. Wolford served as Chief of Police for the City of Oxford during the time period at issue in the lawsuit, and that Plaintiff purports to sue Mr. Wolford. All remaining allegations contained in paragraph 2 are denied. It is specifically denied that Mr. Wolford or any of the other Defendants

"conspired" in any fashion as alleged by Plaintiff, and it is further denied that Mr. Wolford or any of the other Defendants are in any fashion liable to the Plaintiff.

3.      It is admitted that Thomas Marrow is a citizen and resident of Granville County, that Mr. Marrow is and was the City Manager for the City of Oxford during the time period at issue in the lawsuit, and that Plaintiff purports to sue Mr. Marrow. All remaining allegations contained in paragraph 3 are denied. It is specifically denied that Mr. Marrow or any of the other Defendants "conspired" in any fashion as alleged by Plaintiff, and it is further denied that Mr. Marrow or any of the other Defendants are in any fashion liable to the Plaintiff.

4.      It is admitted that Don Jenkins is a citizen and resident of Granville County, that Mr. Jenkins is and was the Human Resources Manager for the City of Oxford during the time period at issue in the lawsuit, and that Plaintiff purports to sue Mr. Jenkins. All remaining allegations contained in paragraph 4 are denied. It is specifically denied that Mr. Jenkins or any of the other Defendants "conspired" in any fashion as alleged by Plaintiff, and it is further denied that Mr. Jenkins or any of the other Defendants are in any fashion liable to the Plaintiff.

5.      It is admitted that the City of Oxford is a municipal corporation created, organized, and existing under the laws of the State of North Carolina. It is also admitted that Plaintiff was employed by the City of Oxford from 1999 until she was terminated on or about January 25, 2006. Except as expressly admitted, any remaining allegations are denied.

6.      The allegations contained in paragraph 6 are admitted.

7.      The allegations contained in paragraph 7 are admitted.

8.      In response to the allegations contained in paragraph 8, it is admitted that Mr. Wolford served as Police Chief for the City of Charlottesville, Virginia, prior to being hired as Oxford Police Chief. The remaining allegations contained in paragraph 8 are denied.

9.     The allegations contained in paragraph 9 are legal conclusions to which no response is required.

10.     In response to the allegations contained in paragraph 10, it is admitted that Chief Wolford's duties included controlling an investigative fund, that the fund is derived from forfeitures and City general funds allocated for the purposes of conducting investigation that require the purchase of drugs, information and/or stolen goods or other contraband.

11.     The allegations contained in the first sentence of paragraph 11 are admitted. The remaining allegations contained in paragraph 11 are denied as stated.

12.     In response to the allegations contained in paragraph 12, it is admitted that Plaintiff's duties included maintaining receipts for the Fund. The remaining allegations contained in paragraph 12 are denied.

13.     The allegations contained in paragraph 13 are denied.

14.     In response to the allegations contained in paragraph 14, it is denied that disbursements from the Fund could only be made during Plaintiff's day-shift working hours, but it is admitted that disbursements from the Fund were generally made during the daytime working hours. Except as expressly admitted, denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     In response to the allegations contained in paragraph 18, it is admitted that Chief Wolford withdrew $400 from the Fund for use in an investigation, but it is denied that the withdrawal violated police policy. Except as expressly admitted, any remaining allegations contained in this paragraph are denied.

19.     The allegations contained in paragraph 19 are denied in part and admitted in part.  It is admitted that Chief Wolford's spouse was involved in an automobile accident, but Defendants do not currently know exactly when the accident occurred, therefore the allegations relating to the date of the accident are denied.  Except as expressly admitted, any remaining allegations are denied.

20.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in the first sentence of paragraph 20, so those allegations are denied.  In response to the allegations contained in the second sentence of paragraph 20, it is admitted that an audit was performed, but Defendants aver that the audit was conducted at the direction of Mr. Marrow (not Commissioner Currin), so the remaining allegations are all denied.

21.     Upon information and belief, admitted.

22.     In response to the allegations contained in paragraph 22, it is admitted that the City requested that SBI come to the Oxford Police Department to investigate, but Defendants do not recall the exact date, so the allegations relating to the date of the investigation are denied.

23.     Defendants lack sufficient knowledge or information to form a belief as to exactly what Plaintiff may have told the City's auditors, so those allegations are denied.  The remaining allegations contained in paragraph 23 are denied.

24.     Defendants lack sufficient knowledge or information to form a belief as to exactly what Plaintiff may have told the SBI, so those allegations are denied.  The remaining allegations contained in paragraph 24 are denied.

25.     In response to the allegations contained in paragraph 25, it is admitted that Chief Wolford was later informed of Plaintiff's false accusations.

26.     In response to the allegations contained in paragraph 26, it is admitted that Plaintiff was counseled by Chief Wolford, but it is denied that this (or any other action) taken with respect to

Plaintiff was on account of any of Plaintiff's communications with the City's auditors. Except as expressly admitted, any remaining allegations are denied.

27.     Upon information and belief, admitted.

28-29.  In response to the allegations contained in paragraphs 28 and 29, it is admitted the Fund was transferred to the City's Finance Department and that Plaintiff had no further duties with respect to the Fund after this transfer. Any remaining allegations are denied as stated.

30.     In response to the allegations contained in paragraph 30, it is admitted only that Mr. Marrow instructed Plaintiff to pursue her grievance by first going through the City's Human Resources Director. The remaining allegations contained in this paragraph are denied, and to the extent that Plaintiff's allegations may be construed to assert that she was denied the opportunity to pursue any appeal through the City's appeal procedure, any such allegations are expressly denied.

31.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 31, so those allegations are denied.

32.     The allegations contained in paragraph 32 are denied.

33.     In response to the allegations contained in the first sentence of paragraph 33, it is admitted that Mr. Jenkins spoke with Plaintiff during the course of an internal investigation of a city employee. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph, so they are denied.

34.     In response to the allegations contained in paragraph 34, it is admitted that Plaintiff was transferred (with the same salary and pay grade) to another position after it was determined that she engaged in misconduct in connection with the investigation of another city employee. The remaining allegations contained in paragraph 34 are denied.

35.    In response to the allegations contained in paragraph 35, it is admitted that Plaintiff submitted a grievance over her transfer. It is also admitted that, after Plaintiff insisted that she was unable to perform or train for the duties of her new position, she was placed on administrative leave with pay. Except as expressly admitted, any remaining allegations are denied.

36.    Admitted.

37.    In response to the allegations contained in paragraph 37, it is denied that Plaintiff was demoted, but it is admitted that Mr. Jenkins informed Plaintiff that he saw no reason to disturb or set aside the transfer. Except as expressly admitted, any remaining allegations are denied.

38-40. In response to the allegations contained in paragraphs 38 through 40, it is admitted that Plaintiff pursued her grievance through an appeal to City Manager Marrow, and that after a hearing, City Manager Marrow reinstated Plaintiff to her previous position. It is also admitted that Plaintiff received a final warning. Except as expressly admitted, any remaining allegations are denied.

41-42. In response to the allegations contained in paragraphs 41 and 42, it is admitted that Mayor Woodlief's campaign stated that the allegations made by the Plaintiff had been investigated by the SBI and other agencies and determined to be unfounded. It is denied that the campaign statements were false. Except as expressly admitted, any remaining allegations contained in paragraphs 41 and 42 are also denied.

43.    Admitted.

44.    Upon information and belief, denied.

45.    In response to the allegations contained in paragraph 45, it is admitted that the Plaintiff has repeatedly uttered false and slanderous statements about Chief Wolford, but it is denied that Chief Wolford called Plaintiff a "liar" or a "slanderer" at the luncheon. It is also denied that the

Plaintiff was "dis-invited" as alleged. Except as expressly admitted, any remaining allegations contained in paragraph 45 are denied.

46-48. In response to the allegations contained in paragraphs 46 through 48, it is admitted that WRAL TV televised an interview with Plaintiff and others, during which District Attorney Currin was interviewed. Defendants do not presently recall the exact date and time of the interview, nor the exact quotations made by Mr. Currin (except that Mr. Currin generally stated that he did not believe that Chief Wolford had engaged in any wrongdoing) or the reporter, so those allegations are denied. Except as expressly admitted, any remaining allegations contained in paragraphs 46 through 48 are also denied.

49. The allegations contained in paragraph 49 are denied, except that it is admitted that an e-mail was sent to the Police Department employees regarding Plaintiff's false accusations. By way of further response, Defendants do not presently recall whether Chief Wolford or Capt. Boyd sent the email. Defendants also aver that the Plaintiff's recitation of the contents of the email is incomplete and/or incorrect. Except as expressly admitted, any remaining allegations are denied.

50. Admitted.

51. Denied.

52. It is admitted that Mr. Marrow released a statement after Plaintiff's termination, but Defendants do not presently recall the exact contents of the statement, so those allegations are denied. Except as expressly admitted, any remaining allegations are denied.

53. Denied.

54. Defendants reallege and incorporate by reference their responses to the preceding paragraphs.

55. Denied.

56.     Denied.

57.     The allegations contained in paragraph 57 are legal conclusions to which no response is required. To the extent a response is required, those legal conclusions are denied.

58.     The allegations contained in the first sentence of paragraph 58 are legal conclusion to which no response is required. The remaining allegations contained in paragraph 58 are also denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Defendants reallege and incorporate by reference their responses to the preceding paragraphs.

63.     The allegations contained in paragraph 63 are legal conclusions to which no response is required.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     The allegations contained in paragraph 70 are legal conclusion to which no response is required.

71.     Denied.

72.     Defendants reallege and incorporate by reference their responses to the preceding paragraphs.

73. The allegations contained in paragraph 73 are legal conclusions to which no response is required.

74. Denied.

75. The allegations contained in paragraph 75 are legal conclusions to which no response is required.

76. Denied.

77. Denied.

78. Denied.

79. Except as expressly admitted above, any remaining allegations contained in the Complaint (including those contained in Plaintiff's Prayer for Relief) are denied. It is expressly denied that Plaintiff is entitled to a recovery or relief of any sort from any of these Defendants.

### THIRD DEFENSE

Plaintiff's conspiracy claims should be dismissed because a conspiracy requires two or more actors.

### FOURTH DEFENSE

Plaintiff's claims against the City (and against the Defendants in their official capacities) are barred by sovereign or governmental immunity.

### FIFTH DEFENSE

Plaintiff's constitutional claims fail because she has adequate state law remedies. Also, to the extent that Plaintiff purports to assert constitutional claims against the individual defendants, the claims should be dismissed because the North Carolina Constitution does not create any rights or cause of action against those individuals.

## SIXTH DEFENSE

Plaintiff's claims against the individual defendants are barred by public officer's/public official's immunity.

## SEVENTH DEFENSE

Plaintiff's claims against the individual defendants should be dismissed because they were not plaintiff's "employer" for the purpose of a wrongful discharge claim.

## EIGHTH DEFENSE

Defendants deny that any employment action was taken with respect to the Plaintiff on account of any allegedly protected expression or activities. Defendants further aver that any employment action taken with respect with respect to the Plaintiff would have occurred in any event, without regard to any such allegedly protected expression or activity.

## NINTH DEFENSE

In the alternative, Defendants plead that Plaintiff's expressive activities were not entitled to protection because the Defendants reasonably apprehended that Plaintiff's activities would damage the morale and efficiency of the Police Department, and the Defendants' interests in the efficient and orderly operation of the Department outweighed the Plaintiff's interests in her speech or expressive activity.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and laches. In the alternative, Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## ELEVENTH DEFENSE

In the alternative, to the extent that the Plaintiff may have failed to exercise reasonable diligence and ordinary care to minimize her damages, Plaintiff's claims are barred by the doctrines of avoidable consequences and failure to mitigate damages.

## TWELFTH DEFENSE

Plaintiff's claims for punitive damages are barred, in whole or in part, by the provisions of Chapter 1D of the North Carolina General Statutes.

## THIRTEENTH DEFENSE

The City (and the individual Defendants in their official capacities) are absolutely immune from punitive damages because punitive damages cannot be awarded against a municipal defendant.

## FOURTEENTH DEFENSE

Plaintiff's claims for punitive damages violate the Fifth, Eighth and Fourteenth Amendments to the United States Constitution (and the comparable provisions of the North Carolina Constitution) in that they seek to deprive the Defendants of property without due process of law, violate the Defendants' rights to equal protection of the laws, and seek to impose excessive fines.

## ADDITIONAL DEFENSE

Defendants reserve the right to amend their answer to include any additional affirmative defenses as the claims of the Plaintiff are more fully disclosed in the discovery process.

WHEREFORE, having answered each and every allegation contained in the Plaintiff's Complaint, Defendants respectfully pray the Court as follows:

1.  That the Plaintiff have and recover nothing of the Defendants and this action be dismissed with prejudice;

2. That the Court tax the cost of this action to the Plaintiff; and

3. That the Court grant the Defendants such other and further relief as it deems just and proper.

Respectfully submitted, this the /8 day of October, 2007

CRANFILL SUMNER & HARTZOG LLP

BY: _____

M. ROBIN DAVIS
N.C. State Bar No.: 21655
NORWOOD P. BLANCHARD, III
N.C. State Bar No. 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277
Email: mrd@cshlaw.com

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

SHARON B. IGLESIAS,

        Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

    This is to certify that the undersigned has this day served the attached *Answer of Defendants* on all of the parties to this cause by depositing a copy hereof, postage prepaid, in the United States Mail, addressed as follows:

| Charles E. Monteith, Jr.<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-3<br>Cary, NC 27513<br>*Attorney for Plaintiff* | Shelli Henderson Rice<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-3<br>Cary, NC 27513<br>*Attorney for Plaintiff* |
|---|---|

This the /5th day of October , 2007

           CRANFILL SUMNER & HARTZOG LLP

BY: _____

M. ROBIN DAVIS
N.C. State Bar No.: 21655
Email: mrd@cshlaw.com
NORWOOD P. BLANCHARD, III
N.C. State Bar No. 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277

STATE OF NORTH CAROLINA  FILED  IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF GRANVILLE  2007 OCT 12  PM 3: 46  07 CVS 846

SHARON B. IGLESIAS,

            Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DEFENDANTS' MOTION TO
DISMISS**

    The Defendants, by and through their counsel of record, respectfully move the Court to

dismiss all of the Plaintiff's claims against them pursuant to Rule 12(b)(6) of the North Carolina

Rules of Civil Procedure. The Complaint fails to state a claim upon which relief can be granted

and should be dismissed for the following reasons, among others:

1.    Plaintiff's claims under the North Carolina Constitution fail because she has adequate

state law remedies and because claims cannot be asserted against individuals under the North

Carolina Constitution.

2.    Plaintiff's wrongful discharge claims against the individual Defendants should be

dismissed because they were not Plaintiff's "employer" for the purposes of a wrongful discharge

claim.

3.    Plaintiff's "conspiracy" claim should be dismissed because there is no plurality of actors.

4.    Plaintiff's claims for punitive damages against the City (and the individual Defendants in

their official capacities) should be dismissed because municipalities are absolutely immune from

punitive damages.

1259757 v 1

5.     Plaintiff's claims against the City (and the individual Defendants in their official capacities) are barred by immunity.

6.     Plaintiff has failed to plead or allege any set of facts in support of the waiver of any applicable immunities.

Accordingly, the Defendants' Motion to Dismiss should be ALLOWED and the Plaintiff's claims should be DISMISSED WITH PREJUDICE.

Respectfully submitted, this the /2__ day of October, 2007

                                CRANFILL SUMNER & HARTZOG LLP

                        BY: _____
                                M. ROBIN DAVIS
                                N.C. State Bar No.: 21655
                                NORWOOD P. BLANCHARD, III
                                N.C. State Bar No. 26470
                                Attorney for Defendants
                                Post Office Box 27808
                                Raleigh, NC 27611-7808
                                Telephone: (919) 828-5100
                                Facsimile: (919) 828-2277
                                E-Mail: mrd@cshlaw.com

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

SHARON B. IGLESIAS,

       Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

      This is to certify that the undersigned has this day served the attached *Defendants' Motion to Dismiss* on all of the parties to this cause by depositing a copy hereof, postage prepaid, in the United States Mail, addressed as follows:

| Charles E. Monteith, Jr.<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-3<br>Cary, NC 27513<br>*Attorney for Plaintiff* | Shelli Henderson Rice<br>Monteith & Rice, PLLC<br>102 Pickering Place, #3-3<br>Cary, NC 27513<br>*Attorney for Plaintiff* |
|---|---|

This the /2 day of October, 2007

                CRANFILL SUMNER & HARTZOG LLP

BY:                                 

                M. ROBIN DAVIS
                N.C. State Bar No.: 21655
                E-Mail: mrd@cshlaw.com
                NORWOOD P. BLANCHARD, III
                N.C. State Bar No. 26470
                Attorney for Defendants
                Post Office Box 27808
                Raleigh, NC 27611-7808
                Telephone: (919) 828-5100
                Facsimile: (919) 828-2277

1259757 v 1

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

SHARON B. IGLESIAS,

Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that the undersigned will bring *Defendants' Motion to Dismiss* for hearing on November 13, 2007 in Granville County Civil Superior Court beginning at 10:00 a.m. or as soon thereafter as it may be heard.

Respectfully submitted, this the ___ day of October, 2007.

CRANFILL SUMNER & HARTZOG LLP

BY: _____

M. ROBIN DAVIS
N.C. State Bar No.: 21655
NORWOOD P. BLANCHARD, III
N.C. State Bar No.: 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277
E-Mail: mrd@cshlaw.com

1266060 v 1

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

SHARON B. IGLESIAS,

           Plaintiff,

v.

JOHN WOLFORD, Chief of Police of Oxford,
N.C., in his official and individual capacities;
THOMAS MARROW, City Manager of Oxford,
N.C., in his official and individual capacities;
DON JENKINS, Human Resources Manager for
the City of Oxford, N.C., in his official and
individual capacities, and, the CITY OF
OXFORD, N.C.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

       This is to certify that the undersigned has this day served the attached document on all of the parties to this cause by depositing a copy hereof, postage prepaid, in the United States Mail, addressed as follows:

Charles E. Monteith, Jr.
Monteith & Rice, PLLC
102 Pickering Place, #3-3
Cary, NC 27513
*Attorney for Plaintiff*

Shelli Henderson Rice
Monteith & Rice, PLLC
102 Pickering Place, #3-3
Cary, NC 27513
*Attorney for Plaintiff*

This the 12th day of October, 2007

CRANFILL SUMNER & HARTZOG LLP

BY: _____

M. ROBIN DAVIS
N.C. State Bar No.: 21655
E-Mail: mrd@cshlaw.com
NORWOOD P. BLANCHARD, III
N.C. State Bar No. 26470
Attorney for Defendants
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277

1266060 v 1

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 846

SHARON B. IGLESIAS,

        Plaintiff,

        v.

JOHN WOLFORD, Chief of Police
of Oxford, N.C., in his official
and individual capacities;
THOMAS MARROW, City Manager
Of Oxford, N.C., in his official
and individual capacities;
DON JENKINS, Human Resources
Manager for the City of Oxford, N.C.,
in his official and individual capacities, and,
the CITY OF OXFORD, N.C.

        Defendants.

AMENDED COMPLAINT
(Jury Trial Demanded)

---

    NOW COMES Plaintiff Sharon B. Iglesias hereby filing this Amended Complaint, with written consent of Defendants as shown in Exhibit A hereto attached. In her Amended Complaint, Plaintiff, complaining of Defendants, alleges as follows:

1. Plaintiff Sharon B. Iglesias (hereafter "Plaintiff" or "Ms. Iglesias") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina.

2. Defendant John Wolford (hereinafter "Defendant Wolford") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina. Insofar as he is sued for acts that he undertook outside of his official capacity as the Chief of the City of Oxford Police Department, he is sued in his individual capacity. Insofar as he is sued for acts he undertook in furtherance of a conspiracy with other employees of the City of Oxford, he is sued in both his individual and official capacities.

3. Defendant Thomas Marrow (hereinafter "Defendant Marrow") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina and the City Manager of the City of Oxford. He is sued for acts he undertook in

1

furtherance of a conspiracy with other employees of the City of Oxford, and so he is sued in both his individual and official capacities.

4. Defendant Don Jenkins (hereinafter "Defendant Jenkins") is, and has been at all times relevant to this complaint, a citizen and resident of Granville County, North Carolina and the Human Resources Manager of the City of Oxford. He is sued for acts he undertook in furtherance of a conspiracy with other employees of the City of Oxford, and so he is sued in both his individual and official capacities.

5. Defendant City of Oxford is a municipal corporation created, organized and existing under the laws of the State of North Carolina. Ms. Iglesias was continuously employed by Defendant City of Oxford from December 2, 1999 until Defendant Wolford and Defendant Marrow fired her on January 25, 2006.

6. Defendant Wolford notified Ms. Iglesias that he was firing her by letter dated January 24, 2006 that Defendant Wolford presented to Ms. Iglesias on January 25, 2006.

7. The former Oxford Police Chief, Roger Paul (hereinafter "Mr. Paul"), hired Ms. Iglesias as the Administrative Assistant to the Chief of Police in December 1999. In or about February 2000, subsequent to Mr. Paul's voluntary resignation as Chief of Police, Captain Bob Williamson (hereinafter "Capt. Williamson") was appointed Acting Chief of Police. Capt. Williamson served in the position of Acting Chief of Police until Defendant Wolford was hired as Chief of Police in or about June 2000. Ms. Iglesias was retained as Administrative Assistant to the Chief of Police throughout these personnel changes.

8. Upon information and belief, sometime prior to his being hired as the Oxford Police Chief, Defendant Wolford was previously employed as the Police Chief in Charlottesville, Virginia and became separated from this position when serious questions were raised about his performance and credibility in his capacity as Chief of Police there.

9. As the Chief of Police of the City of Oxford, North Carolina, Defendant Wolford was subject to the laws of the State of North Carolina, including but not limited to the General Statutes of the State of North Carolina.

10. As Chief of Police of the City of Oxford, North Carolina, Defendant Wolford was required, inter alia, to serve as auditor of the Drug and Alcohol Law Enforcement Special Fund (hereinafter "Fund"). The monies contained in the Fund are derived from state and federal forfeitures and the Fund is only to be used in official investigations.

11. At all times relevant to this complaint, all officers of the City of Oxford Police Department, including Defendant Wolford, were required to follow established police policy and procedure in order to obtain monies from the Fund. Such established police policy and procedure required multiple means of verification to ensure that the monies of the Fund were being withdrawn or otherwise accessed for proper purposes to include the requirement that a receipt for such monies be signed and that a witness be present for the receipt of said transactions.

2

12. Ms. Iglesias's duties included maintaining the receipts of the Fund until she reported that Defendant Wolford had received monies from the Fund without following required police policy and procedure. After reporting that Defendant Wolford had received monies from the Fund without following required procedure, Ms. Iglesias's work duties were diminished so as to no longer include her administrative maintenance of the Fund.

13. Upon information and belief, on at least eight (8) occasions, starting on or about November 16, 2001 through to the time Ms. Iglesias reported the violation in May 2004, Defendant Wolford withdrew cash from the Fund for his own personal use.

14. When officers assigned to the Oxford Police Drug Unit received cash disbursements from the Fund, they did it during normal working hours and completed all required paperwork, according to established police policy and procedure, for receipt of the disbursement with required signatures and witness signature in place.

15. From November 16, 2001 until Ms. Iglesias reported her concerns regarding Defendant Wolford's receipt of monies from the Fund, there were eight (8) occasions on which Defendant Wolford took cash monies from the Fund without following established police policy and procedure. On each of these eight (8) occasions, Defendant Wolford personally obtained cash monies from the Fund absent the presence of a witness and without having otherwise appropriately documented such withdrawals from the Fund.

16. Upon information and belief, the respective date and amount of certain withdrawals from the Fund made by Wolford for which Wolford failed to follow established procedure were temporally and otherwise proximate to Defendant Wolford's personal financial obligations. Plaintiff contends that Paragraphs 17-19 that follow below are an example of this allegation; however, Paragraphs 17-19 are further alleged independently and separately.

17. While at work on April 15, 2003, Ms. Iglesias observed Defendant Wolford engage a female caller in a lengthy argument by telephone concerning car repairs in the amount of four-hundred dollars ($400.00).

18. At some point between the time that Ms. Iglesias left work on April 15, 2003 and prior to Ms. Iglesias reporting for work on April 16, 2003, Defendant Wolford withdrew four-hundred dollars ($400.00) from the Fund without following established police policy and procedure by completing a receipt and having a witness for said withdrawal.

19. Within a month prior to Defendant Wolford's withdrawal from the Fund as described in Paragraph 18 above, Defendant Wolford's then wife, Paula Susan Wolford, had an accident while traveling in a personal vehicle belonging to herself and Defendant Wolford.

20. After Defendant Wolford took the four-hundred dollars ($400.00) from the Fund following regular work hours on April 15, 2003, Ms. Iglesias reported her concerns to

3

City of Oxford Commissioner, Alice Currin (hereinafter "Commissioner Currin"). Upon information and belief, Commissioner Currin then requested an audit of funds maintained by the Oxford Police Department, beginning with the Fund.

21. On May 3, 2004, Officer Warren Hicks, Oxford Police Department Evidence & Property Room Technician, was alleged to have withdrawn funds from the Property & Evidence Room plus a safety deposit box maintained by OPD and funds collected for Special Olympics for his own personal use

22. On May 6, 2004, the State Bureau of Investigation ("SBI") came to the Oxford PD and began investigating funds missing from the Property and Evidence Room.

23. On May 6, 2004, Auditors for the City of Oxford came to Ms. Iglesias' office to audit all monies in the safe kept in her office, and the auditors interviewed Ms. Iglesias about the procedures in place to account for the cash in the Fund. Ms. Iglesias, in good faith, answered their questions about the cash withdrawals from the Fund as described above, and reported to the City Auditors that she believed her supervisor, the Chief of Police, Defendant Wolford, was wrongfully taking money from the Fund for his own personal use.

24. During the investigation by the SBI concerning Officer Warren Hicks at OPD, on or about May 6, 2004, Ms. Iglesias, in good faith, reported to the SBI that she believed her supervisor, the Chief of Police, Defendant Wolford, was wrongfully taking money from the Fund for his own personal use.

25. Upon information and belief, Defendant Wolford was made aware of Ms. Iglesias' reports to the City Auditor about his questionable withdrawals.

26. On May 17, 2004 Defendant Wolford, after threats and verbal reprimand, issued a written warning to Ms. Iglesias in retaliation to her reporting of Defendant Wolford's misuse of funds to City Auditors.

27. On May 18, 2004, Ms. Iglesias wrote to Oxford City Manager Defendant Marrow asking to meet with him to appeal the written warning she had received the day before from Defendant Wolford.

28. On May 19, 2004, Defendant Wolford instructed Ms. Iglesias to sign the Fund over to Defendant Wolford because Defendant Wolford was going to store it in the Finance Office located at City Hall. Defendant Wolford further instructed Ms. Iglesias that she would no longer have any responsibilities concerning the maintenance and/or control of the Fund.

29. Ms. Iglesias transferred everything in the Fund file to Defendant Wolford as he had instructed, and was thereafter disallowed from any maintenance and/or control of the Fund.

4

30. On May 25, 2004, Ms. Iglesias received a letter from Defendant Marrow denying Ms. Iglesias's request to meet with him to appeal the written warning, despite the City of Oxford's established policy and procedure that provided, as of May 2004: "Those wishing to pursue an appeal shall have the right to appeal directly to the Human Resources Director *or the City Manager.*" (emphasis added)

31. On or about the date of July 23, 2004, the SBI called and requested Ms. Iglesias to come to Raleigh. Ms. Iglesias provided the SBI with documents and information relating to Defendant Wolford's withdrawing cash from the Fund without signing out for it in her presence or in the presence of a witness and the evidence that these withdrawals matched his personal financial needs. The SBI told Ms. Iglesias they would talk with the Granville County District Attorney Sam Currin about the case.

32. In mid-August 2004, approximately one week following the SBI's contact with Ms. Iglesias with the resulting comments made by the Granville County D.A. Sam Currin resulting from the SBI's inquiry, Defendant Marrow informed then Oxford City Commissioner Mr. James Carey, in a private meeting, that "we are going to take care of the problem at the police department." Defendant Marrow further informed Mr. Carey that Defendant Marrow, Defendant Wolford, and Defendant Jenkins were "going to set [Ms. Iglesias] up to be fired from her job."

33. On September 2, 2004, City of Oxford Human Resources Director Defendant Jenkins came to Ms. Iglesias' office and told her he was conducting an internal investigation ordered by Defendant Marrow, and that Defendant Jenkins wanted to ask Ms. Iglesias some questions. Ms. Iglesias was fully cooperative and provided truthful answers to Defendant Jenkins' questions.

34. Three weeks later, on September 24, 2004, Defendant Wolford notified Ms. Iglesias of her demotion from her position as Administrative Assistant to the Chief of Police to the position of Police Dispatcher because it had been decided that Ms. Iglesias had "breached confidentiality" concerning an internal investigation involving another City employee.

35. On September 27, 2004, Ms. Iglesias grieved her demotion to Defendant Marrow. On October 4, 2004, after Defendant Wolford had received this grievance, he placed Ms. Iglesias on Administrative Leave with pay.

36. On October 6, 2004, Ms. Iglesias and her then attorney met with Defendant Jenkins.

37. In a letter dated October 7, 2004, Defendant Jenkins informed Ms. Iglesias that he saw no reason to change Defendant Wolford's demotion of her.

38. Ms. Iglesias appealed this decision to Defendant Marrow who conducted a hearing on October 14, 2004.

39. Defendant Marrow referred to the October 14, 2004 hearing as a "name clearing hearing."

40. On October 22, 2004, Defendant Marrow informed Ms. Iglesias that she would be reinstated to her position as Administrative Assistant effective October 27, 2004, but that she was receiving a final warning.

41. During the summer and fall of 2005, there was a campaign for the position of Mayor of Oxford. During said mayoral campaign, letters and campaign advertisements— attributable to the campaign of incumbent Mayor Al Woodlief—were published stating that Defendant Wolford's alleged taking of monies from the Fund had been investigated by the SBI and other agencies and that no wrongdoing was found.

42. Upon information and belief, said statements by Mayor Woodlief and/or his campaign were false as the SBI dropped its inquiry and could not pursue an investigation into the alleged misuse of funds by Defendant Wolford in or about August 2004, after having been informed by Granville County District Attorney Sam Currin that he did not wish to pursue an investigation concerning the same.

43. Incumbent Mayor Al Woodlief was reelected on November 8, 2005.

44. In an interview with WRAL on or about January 2006, Granville County District Attorney Sam Currin admitted that no investigation into such concerns had actually been conducted by the SBI.

45. On November 18, 2005, Plaintiff was dis-invited from a luncheon meeting of the PD convened by Defendant Wolford. Upon information and belief, Defendant Wolford, to an audience of officers and a few individuals from the public, called Ms. Iglesias "a liar and a slanderer."

46. On January 9, 2006, WRAL TV aired a televised interview with Ms. Iglesias and others in the Oxford community including former City Commissioner James Carey and Granville County District Attorney Sam Currin regarding Defendant Wolford's alleged wrongdoing.

47. Upon information and belief, during an interview by WRAL reporter Kelcey Carlson (hereinafter "Carlson") in connection with this report, District Attorney Sam Currin told Carlson that Defendant Wolford had "paid the money back."

48. Upon information and belief, District Attorney Sam Currin further stated to Carlson that he "trusted [Defendant Wolford]" and that "if [Sam Currin] thought or felt that there was any wrongdoing then [Sam Currin] would investigate."

49. Upon information and belief, on January 10, 2006, Defendant Wolford e-mailed all Oxford Police Department employees having access to e-mail, with the exception of Ms. Iglesias, an e-mail providing, in pertinent part: "Regarding recent actions by Sharon Iglesias going on WRAL, on air, continuing to discredit me and this department, her actions are not being ignored..."

6

50. On January 25, 2006, Defendant Wolford fired Ms. Iglesias, effective that day.

51. Ms. Iglesias was not afforded a pre-dismissal conference, as required by established City of Oxford Personnel Policy, in advance of her dismissal effective January 25, 2006.

52. On January 27, 2006, Defendant Marrow issued a written statement to the media providing that "[Ms. Iglesias'] allegations have been investigated by the SBI, the City's outside audit firm, the [District Attorney], and the City Manager."

53. Despite Ms. Iglesias' best efforts, she has been unable to obtain gainful employment consistent with her experience, abilities and qualifications.


## FIRST CLAIM
## UNLAWFUL CONSPIRACY


54. All allegations in Paragraphs 1-53 are re-alleged and incorporated herein by reference as if fully set forth.

55. Defendants Marrow, Jenkins, and Wolford, agreed on a common plan and took active steps to carry out the plan to intimidate or interfere with Ms. Iglesias' efforts to report what she believed, in good faith, was criminal activity conducted by Mr. Wolford. Threatening or intimidating a witness in the administration of justice is against the public policy of North Carolina.

56. When Ms. Iglesias refused to be intimidated, and would not be part of an unlawful conspiracy to cover-up Mr. Wolford's alleged wrongdoings, Defendants Marrow, Jenkins and Wolford engaged in a civil conspiracy to wrongfully discharge Ms. Iglesias.

57. The State of North Carolina has a public policy of encouraging employees to report perceived misuse of state and federal funds, and to cooperate with investigations concerning the same.

58. Defendant Wolford, as chief sworn law enforcement officer of the City of Oxford, had the duty to conduct himself in accordance with the laws of the State of North Carolina. He misrepresented his conduct, with respect to his withdrawals from the Fund, to government officials, and then discharged the main witness, Ms. Iglesias, to his wrongdoings after she refused to be intimidated.

59. Insofar as Defendants Wolford, Jenkins, and Marrow conspired to intimidate and then terminate Ms. Iglesias, because she reported misuse of funds by the chief law enforcement official, which she believed by law to constitute the crime of embezzlement, and then refused to be silenced about Defendant Wolford's using State and Federal funds

7

for his own personal needs, such actions are outside of the scope of the employment of the Defendants, and they are sued in their individual capacity for this common law tort.

60. Insofar as Defendants Wolford, Jenkins, and Marrow, outside of the scope of their employment, conspired to intimidate and then deprive Ms. Iglesias of her employment because she would not be silenced about Mr. Wolford's wrongdoing, this showed wanton, reckless and intentional disregard for Ms. Iglesias' rights and therefore Defendants are liable to pay her compensatory and punitive damages for humiliation, emotional distress, anguish, economic loss, and loss of professional esteem.

61. The amount of such damages, while in excess of ten-thousand dollars ($10,000.00), will be determined at trial.


## SECOND CLAIM
## VIOLATION OF NORTH CAROLINA CONSTITUTION'S RIGHT TO FREE SPEECH


62. All allegations in Paragraphs 1-61 are re-alleged and incorporated herein by reference as if fully set forth.

63. North Carolina's Constitution guarantees its citizens the right of freedom of speech and of the press, because these "are two of the great bulwarks of liberty and thus shall never be restrained."

64. Ms. Iglesias spoke out publicly in the media after she had made every effort internally to raise her concerns in the least disruptive way she could about her supervisor's diverting state and federal funds for his own personal use. She reported her concerns to the City Auditor during an audit called for by City Officials and to the SBI

65. When it was clear that the City Government was not going to conduct a proper investigation concerning the misuse of public monies, Ms. Iglesias reported the matter through the media because it was a matter of great public concern. The public report was a matter of legitimate public concern, as the potentially unlawful conduct of its highest law enforcement official in the City is certainly a matter of great public concern. Plaintiff's statements concerning Defendant Wolford and others, were well informed, and were made with an honest and otherwise legitimate purpose.

66. Because of her statements as a public citizen about matters of public concern, Defendant Wolford retaliated against Ms. Iglesias by discharging her in an abusive, abrupt, humiliating, and otherwise unconstitutional manner.

67. The abusive discharge—calling Ms. Iglesias a "liar and slanderer" in front of all her co-workers at a Department luncheon, where she was specifically dis-invited, and then discharging her in violation of the written rules of the City—was clearly designed to send

8

a clear message to other employees that they have no rights to free speech about any wrongdoings they witness at the Police Department.

68. This claim is brought directly under the North Carolina Constitution's Article I, Section 14. The retaliatory discharge herein described violates the public's interest in free expression and communication of important facts needed to make decisions about public funds and policies. If the retaliatory discharge herein described is perceived to be constitutional, the same would have a wrongfully, chilling effect against the Plaintiff, law enforcement employees of the City of Oxford, other civilian employees of the City of Oxford, and other employees of public institutions funded by local, state and federal funds.

69. Plaintiff was in the best position to speak out the alleged violations of law about which she complained.

70. No other legal remedy is available to Ms. Iglesias for this claim, since the State's Whistleblowing Statute (Article 14, Chapter 126 of the General Statutes) applies only to State employees, so she brings this action directly under the State Constitution.

71. The retaliatory discharge for exercising her constitutional rights to free speech caused emotional anguish and financial damage to Plaintiff, the amount of which exceeds ten-thousand dollars ($10,000.00), will be proven at trial.

## THIRD CLAIM
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

72. All allegations in Paragraphs 1-71 are re-alleged and incorporated herein by reference as if fully set forth.

73. North Carolina, although providing wide latitude to management in discharging employees, prohibits discharges for unlawful reasons or reasons which contravene public policy.

74. Ms. Iglesias was discharged by Defendant City of Oxford and Defendant Wolford because she tried to report, through proper channels, evidence that he was diverting state and federal funds for his private use. When the SBI told her that the District Attorney was not going to pursue the matter, and a campaign of harassment and intimidation followed, Ms. Iglesias tried to bring the evidence forward to other officials.

75. It is the public policy of the State of North Carolina for police department employees to report and cooperate with investigations of good faith allegations of possible illegal activities.

76. Ms. Iglesias was a critical witness in this important investigation. She had important evidence to provide. Defendant Wolford, who was charged with investigating crimes in the City of Oxford, blamed the messenger and arbitrarily and capriciously fired the witness to his own alleged criminal activity.

77. The actions of Defendant City of Oxford and Defendant Wolford violated North Carolina public policy and so constitute wrongful discharge.

78. Defendants City of Oxford, Wolford, Jenkins, and Marrow wrongfully discharged Ms. Iglesias with wanton, reckless and intentional disregard for her rights, and are therefore liable to pay her compensatory damages for humiliation, anguish, emotional distress, economic loss, and loss of professional esteem. The amount of such damages will be proven at trial.

79. Upon information and belief, the Defendant City of Oxford and its employees, including the individual Defendants, are protected by one or more policies of liability insurance purchased by the Defendant City pursuant to N.C.G.S. § 160A-485 with respect to the acts and omissions complained of herein, and to such extent the Defendant City for itself and its employees, Defendants Wolford, Jenkins and Marrow, have waived any official, sovereign, or governmental immunity to which the Defendant City or its employees might otherwise be entitled.

## FOURTH CLAIM
## VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS AND 42 U.S.C § 1983

80. Plaintiff hereby incorporates by reference paragraphs 1-79 of the Complaint as though fully set forth herein.

81. The actions of Defendants as set forth herein constitute the official acts of the City of Oxford.

82. The actions of Defendants as set forth herein constitute the official acts of the Chief of Police of the City of Oxford, the City Manager of the City of Oxford, and the Human Resources Manager of the City of Oxford with respect to the discharge of employees.

83. In the alternative, the individual Defendants violated Plaintiff's rights under color of their authority as City officials.

84. The actions of Defendants as set forth herein constitute violations of Plaintiff's right to free speech under the First Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C § 1983.

85. Plaintiff's right to free speech was violated because she was terminated from employment for making statements on matters of public concern and in order to silence and discredit her from speaking further on matters of public concern.

10

86. Plaintiff is entitled to recover from Defendants her compensatory damages as provided by law including but not limited to: reinstatement to her position, back pay, front pay, benefits of employment, medical bills, mental suffering, loss of enjoyment of life, and humiliation, which damages are in excess of ten-thousand dollars ($10,000.00), the exact amount to be proven at trial.

87. The individual Defendants' conduct as set forth herein was malicious and/or corrupt, thereby justifying an award of punitive damages.

88. Plaintiff is entitled to punitive damages from the individual Defendants in excess of ten-thousand dollars ($10,000.00).

89. Plaintiff is further entitled to recover the costs and expenses of this action including reasonable attorney's fees and such interest as may be allowed by law.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff Prays the Court:

a. Enter an injunction ordering Defendants to immediately reinstate Plaintiff to her position, with all back pay, and other benefits, as if she had never been discharged, and prohibiting Defendants from threatening, harassing, or discriminating against Plaintiff for having brought this suit or against any potential witness for participating in this suit;

b. Award Plaintiff compensatory damages as determined by the jury;

c. Tax the defendants for all costs and reasonable attorneys' fees associated with this action;

d. Award Plaintiff punitive damages in an amount to be determined by the jury;

e. That the Court award such other and further relief as it deems proper.

f. That this case be tried before a jury.

This the 7th day of November, 2007.

Respectfully submitted,

ATTORNEY FOR PLAINTIFF:

Charles E. Monteith, Jr.
N.C. State Bar No. 9368
For the firm of
MONTEITH & RICE, PLLC
102 Pickering Place, #3-D
Cary, North Carolina 27513
Telephone: (919) 460-6241

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of Plaintiff's AMENDED COMPLAINT has been furnished via U.S. Mail to the following attorneys of record this the 7th day of November, 2007:

M. Robin Davis
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, NC 27611-7808

Norwood P. Blanchard, III
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, NC 27611-7808

Charles E. Monteith, Jr.
Monteith & Rice, PLLC
102 Pickering Place, #3-D
Cary, North Carolina 27513
(919) 460-6241

13

CRANFILL SUMNER & HARTZOG LLP

ATTORNEYS AT LAW

**RALEIGH OFFICE**
225 HILLSBOROUGH ST., SUITE 300 (27603)
POST OFFICE BOX 27808
RALEIGH, NORTH CAROLINA 27611-7808
TELEPHONE (919) 828-5100
FAX (919) 828-2277

1209 CULBRETH DRIVE, SUITE 200
WILMINGTON, NORTH CAROLINA 28405

**CHARLOTTE OFFICE**
227 W. TRADE STREET, SUITE 600 (28202)
POST OFFICE BOX 30787
CHARLOTTE, NORTH CAROLINA 28230
TELEPHONE (704) 332-8300
FAX (704) 332-9994

TELEPHONE (910) 509-9778
FAX (910) 509-9676
WC FAX (910) 332-4639
WWW.CSHLAW.COM

NORWOOD P. BLANCHARD, III
ATTORNEY AT LAW
DIRECT DIAL #: (910) 332-0944
EMAIL: npb@cshlaw.com

November 6, 2007



## VIA U.S. MAIL AND FACSIMILE (919) 788-8714

Charles E. Monteith, Jr.
Monteith & Rice, PLLC
102 Pickering Place, #3-D
Cary, NC 27513

Re:    **Sharon B. Iglesias v. City of Oxford, John Wolford, Thomas Marrow,**
       **and Don Jenkins**
       **Granville County Civil Action No.: 07 CVS 846**
       **Our File No.: 538.993519**

Dear Mr. Monteith:

Please allow this letter to serve as written confirmation of our consent to your proposal to amend the Complaint.

If you have any questions, please feel free to contact me.

With best wishes, I remain

Sincerely,

*[signature]*

Norwood P. Blanchard, III

NPB/lao

1272317 v 1