EXHIBIT #66 [initials] 10-7-08

Monday, May 17, 2004

*Response to Chief Wolford's comments during our meeting on Thursday, May 13, 2004, with Capt. Bob Williamson present during the meeting. (Letter of response will be copied to Capt. Williamson)*

Chief,

I certainly understand your concerns for confidentiality within the office. Quite frankly, you have made your concerns on confidentiality very clear, as you had me to sign a confidentiality form along with Bob Williamson and Charles Crudup three years ago during a very awkward time involving Lyle Gagnon. I am disheartened to think that there is corruption within this department, as I know everyone else is also. The recent incident of over $10,000 being stolen by Warren Hicks, as well as your internal investigation into corruption in the department, that as you stated, ended in late 2003, is a sad example. Unfortunately, your investigation ended to soon, or perhaps you would have detected Warren's embezzlement of funds. You are absolutely correct that trust must go both ways. Protective activity is not only an individual's right, but, an individual's requirement and responsibility when entrusted with information and/or funds. If you had trusted me enough to explain the internal corruption investigation I would have actively assisted you in every way possible. So, I am, at this point, requesting that you not memo this perceived "breach of confidentiality" to my employee file, based on the grounds that I was unaware of your internal investigation and the sensitivity of it, and in fact, was only doing my job. If you had confided in me; had a little faith in me, this problem would never have developed.

[handwritten margin notes: Tiffan / Naw / of / in Frazer]

I sincerely appreciate your notice of my commitment to my job; the duties that I perform and the responsibilities that I hold. And to clarify any confusion, I do like my job and I have no intention of going anywhere. I would ask you at this time to consider; what if you had an assistant that didn't notice when money disappeared inappropriately and did not know policy and procedure and had no moral compass. How could you ever hope to trust that assistant? Chief, ALL of this misconception could have been easily avoided if you had not breached proper procedure in the handling of these funds. I would have had no grounds for suspicion if there had been no suspicious activity and proper procedure had been followed. I am so glad all of this has been brought to light because it truly bothered me to be so unsure of your actions. After all, in not knowing about this internal investigation that you and the City Manager and the City Commissioner's were conducting, and being the ardent professional that I am, how could I not ask legitimate questions. Clearly, in this situation, I was doing my job and I was looking out for the best interest of this department and the city.

In reference to the term "breach of confidentially", which in reference to my conversation with Jason Tingen; I believed, due to my conversation with the City Auditor, the questions he asked, and the only answers that I could give (the truth as far as I knew) would bring questions to your doorstep. I assumed that you would be upset with me. Obviously, to some extent, I was correct. However, in my conversation with Jason, I

OXFORD0066

Case 5:07-cv-00437-D    Document 34-10    Filed 01/07/2009    Page 1 of 3

merely said that you might be angry with me and I would like a witness (protective activity). Apparently, I am not the only one that assumed. You not only did not ask me if the conversation occurred between Jason and myself, and you did not ask me if what you had heard was correct, you automatically assumed Jason Tingen or someone had told you, without error, the truth. Again, I am completely aware that confidentiality and discretion must be in place at all times. In our meeting on 5/13/04, you stated you had heard from others that I did not trust you and you also stated that you do not trust me. It would appear to me that, first of all, you and others had also been discussing our level of trust and is that not in a sense breach of confidentiality? Secondly, the fact that you do not trust me instills a lot of concern. I cannot think of anything that I have done that would give you cause to distrust me. I have disclosed no confidential information. I answered questions that were ask of me by the City Auditor, I don't think that I can refuse to answer his questions.

In past positions that I have held, confidentiality has never been a problem and the handling of money has never been a problem. I have always been considered to be a very trustworthy employee performing my job in a highly competent manner. To this very day my files, accounting and otherwise, are in perfect order. As you well know, I handle three cash accounts, petty cash, undercover drug funds, and the officer's fund (profits from the drink machine). In the four and one-half years that I have been with the department, these accounts have balanced perfectly every time. Not only the previously listed money accounts do I handle, but, I am also responsible for parking ticket money and the City credit card for OPD. Chief, you don't have to come in during the night, or when I am not here, to check up on me concerning these cash accounts. I welcome you to do your checking during regular business hours. I would not feel offended in any manner. But would rally in the fact that I am trustworthy and doing a good job.

I do not, nor have I ever eaves dropped on your conversations or meetings. But I have seen others do it. There have even been times when I intentionally left the office to avoid hearing conversations. Frankly, your comment in reference to moving my office or rebuilding yours shocked me, but if this is your intent, and if this would make you more comfortable, I would happily move to accommodate you. In fact, allow me to suggest that it might be more efficient to switch Lt. Glen Boyd's office with mine or maybe the Captain's. The bottom line is, the only information I have ever been privy to has been what was directly given to me or overheard in a heated conversation in which you inadvertently raised your voice. In those circumstances, not only did I hear you, but, anyone in my office, the hallway, or the dispatch office could hear you. Given the circumstances, not only does the law state that you had no reasonable expectation of privacy, but any investigator would realize there was clear opportunity for someone beside myself to, not only have overheard, but, discuss what you may have said. We are both aware that there are many different people that work in this department, with many different personalities, beliefs, and agendas. To assume that any dissemination of information could have only come from me would truly be beneath your abilities.

OXFORD0067

Chief, as much as I hate to say this, your personal life is on the lips of most everyone in the department and in the public's eye for everyone to see. You are an example not only

to the officers, but the public looks up to you also. I am probably one of the only ones that does not join in the gossip circles. I do not involve myself in others personal lives. Quite frankly, I know things about your personal life I wish I didn't know. The fact is, I have not run around spreading that information in this department or the public. But others have. I know because I hear them. In fact, I am quite hurt and somewhat embarrassed when someone in the department, or on the street approaches me and tries to get information out of me about you and your personal life, and sometimes other information. Clearly, there may be a breach of confidentiality on many levels in this department. But frankly, I can assure you, I am not the one you need to worry about.

As I originally stated, and after what has most recently happened, I would actively pursue any means to support you in your continuous internal investigation into corruption. Knowing, per our meeting, that the City Commissioners, as well as the City Attorney, and the City Manager are involved with this probe, and as a gesture of good faith, I will be sending a brief letter to Tom Burnette, Tommy Marrow and each of the City Commissioners, in support of you and the need for an investigation into any corruption within the Oxford Police Department. I do stand behind you in your efforts.

Most sincerely,


Sharon B. Iglesias

OXFORD0068

Case 5:07-cv-00437-D    Document 34-10    Filed 01/07/2009    Page 3 of 3